Thomas W. JOHNSON and City of St. Joseph, Missouri, Respondents,

v.

Frieda WATKINS, Appellant.

No. 22452.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1957.

Grace S. Day, St. Joseph, for appellant.

Francis A. Pickle, and J. B. Steiner, St. Joseph, for respondents.

CAVE, Judge.

Under the ordinances of the City of St. Joseph, the council, after a hearing, revoked the liquor license of appellant. She filed a petition for review in the circuit court, and the transcript of proceedings before the council was transmitted to that court, and in due time, the order of the council was affirmed and appeal was perfected to this court.

Under Points and Authorities, appellant sets out seven alleged grounds of error, but in reality they present the following questions: (1) Did the council err in refusing to grant appellant a continuance because of illness at the first hearing; (2) is there substantial evidence to sustain the order of the council; (3) was the order of the council an abuse of discretion, arbitrary and capricious; and (4) did the trial court err in overruling appellant's motion requesting corrections in the transcript certified to the circuit court by the council.

The appellant was the sole owner of the Brown Owl Tavern in St. Joseph, and for a number of years had had a license to sell liquor. On September 26, 1952, Police Officer Johnson filed complaint before the council charging that appellant had sold 5% beer to one Danny Stafford, a boy of 18 years of age; that the appellant or her employees on ten or twelve other occasions prior to that time had sold Stafford 5% beer; that Alberta Lee Pierce, age 13, had on numerous occasions prior to February 13, 1952, purchased beer of the appellant or her employees; that said employees well knew that Alberta Lee Pierce was a minor. The complaint requested that the council inquire into the matter and give notice of the time of the hearing to appellant. Notice that a hearing would be held at 7:30 p. m. on October 6, 1952, together with a copy of the complaint and attached exhibits, was served on the appellant on September 26th. On October 6th, appellant appeared by an attorney, who requested that the hearing be continued because the appellant was ill, and could not be present in person. He

exhibited a statement from a doctor to that effect. After some discussion, the council decided to hear the testimony of certain witnesses who were then present, and to continue the cause to a later date for further hearing.

Officer Johnson testified that at about 8:30 p. m. on September 22, he was driving along a street near the Brown Owl Tavern, and saw a boy by the name of Jimmy White standing at the north entrance of the tavern; that he saw Stafford come out of the tavern with a quart bottle of Country Club beer; that White and Alberta Lee Pierce took a drink out of the bottle; that he arrested the three youths and took them to police headquarters; that he had gone to the tavern prior to this time and warned the appellant and her sister about selling beer to minors, and that appellant and her sister stated that the only time they recalled selling beer to Alberta Pierce was when she had a note from her parents. "I asked them whether it was her parents' signature, and they said they did not know whether the note was signed by the parents or not, but she did sell her a quart of beer". Officer Beierle testified that he had received numerous complaints about the tavern selling beer to minors and that he had warned appellant about doing so. He was present when the youths were interviewed at the police station and testified concerning what they stated to the police officers at that time about buying beer at the tavern.

Danny Stafford testified that he and Jimmy White, age 17, and Alberta Pierce, age 13, stopped outside of the tavern and he went in and purchased a quart of 5% beer from a barmaid; that it was opened for him inside the tavern and he rejoined White and Pierce and they were in the act of consuming it when they were arrested by Officer Johnson; that he had purchased two quarts of beer there earlier in the evening; that he had purchased beer there on several occasions; that he was 18 years of age; and that no one there had asked him his age, or for any identification.

Jimmy White testified to the same occurrences on the evening of September 22, concerning the purchase of the beer; and stated that he was 17 years of age.

After the testimony of these three witnesses was heard, appellant's attorney called witness Enos Simerly, who testified that he had "tended bar and helped my wife out who works at the tavern"; that he knew Danny Stafford; that in June, 1952, Danny Stafford had come into the tavern to purchase beer, and that Stafford told him he was 21 and "pulled out a driver's license dated 1929"; that his wife and a barmaid by the name of Betty Dunn were standing near when Stafford exhibited his driver's license.

Danny Stafford was recalled and denied that he had told this witness he was 21 years of age, or had shown him a driver's license.

The cause was then continued until October 14th, at which time the appellant appeared in person and by attorney and further evidence was heard. She testified that she was the sole owner of the Brown Owl Tavern; that she had been ill for some time and that her sister was looking after the place, and that she had given instructions to her employees not to sell liquor to minors. She knew nothing of the occurrence on September 22d.

Appellant also produced several witnesses. Ivan Ball testified that he was 28 years of age; that he had worked at the Brown Transfer Company for a time with Danny Stafford, and that sometime in June, 1952, he saw Stafford come into the tavern and heard William Simerly say to Stafford, "You look a little young", whereupon he saw Stafford take a card from his billfold and hand it to Simerly and "then he came back and began drinking beer". He didn't know what was on the card, and he didn't know Stafford's age, but thought he was older than 21 years.

Betty Dunn testified that she was a barmaid at the tavern and sold Stafford beer at different times, and particularly on September 22d; that in June, she saw Stafford present a card to Simerly and immediately after that Simerly sold him beer, and that she assumed he was of the proper age. She never asked Stafford his age or asked Simerly what was on the card. She was arrested for selling Stafford the beer on September 22d and entered a plea of guilty in the magistrate court and was sentenced to six months in jail, but given a stay. Stafford had testified that he purchased three quarts of beer on the evening of September 22d. This barmaid admitted that she had sold him three quarts of beer at different times that evening before he was apprehended.

Mrs. Simerly testified that she was working at the tavern in June, 1952, when Stafford came in and her husband told him that he looked a little young, and she saw Stafford give her husband his driver's license, which showed his birth date to be 1929.

Mrs. Knowles testified that she was a sister of the appellant, and that she had been at the tavern at different times during the summer of 1952; that she had seen Stafford there at different times and had seen him buy beer; that she did not know his age, but thought he must be about 24.

Officer Beierle was recalled, and testified that Betty Dunn had told him that she had never heard anyone ask Stafford his age or to show any proof of his age.

Danny Stafford was recalled, and denied that he had ever shown a card of any kind or driver's license to any one in the tavern, or had ever told any one that he was over 21 years of age.

(In fairness, it should be stated that appellant's present attorney did not represent her at the hearings before the council or at the time the cause was transferred to the circuit court.)

It is apparent from the evidence that there is no conflict relative to the sale of

beer to Stafford. That is admitted. The only conflict is whether he told any of appellant's employees that he was over 21 years of age, or showed any of them a card which so indicated. He denied doing so, and Officer Beierle testified that barmaid Dunn, who sold him the beer, stated to the officers shortly after the occurrence that she had never asked his age or heard anyone else in there do so and that she had never seen him exhibit a card to Simerly or anyone else.

■ It was the function of the council to weigh the evidence and determine the credibility thereof. It was the fact-finding body. The members of the council heard the witnesses testify and could observe their demeanor, and were in a much better position to determine their credibility than the trial court or this court.

■ It is well established that the courts, in reviewing the findings and decision of an administrative tribunal, have the authority to determine whether the same was authorized by law and supported by competent and substantial evidence on the whole record; to determine whether the administrative tribunal could have reasonably made its findings and reached its result, upon a consideration of all of the evidence before it; and to set aside a decision clearly contrary to the overwhelming weight of the evidence. But the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony. Rush v. Swift & Co., Mo.App., 268 S.W.2d 589, 593–594.

■ With this scope of limitation on our authority to review the actions of the council, we are compelled to hold that there was substantial evidence to support the findings of the council; and that Section 12–509 of the ordinance authorized the revocation of the license, if the council saw fit to so order.

■ It is also urged by appellant that the council erred in not granting a continuance of the cause at the first hearing because of her illness. She seems to approach this question on the theory that the proceedings were a criminal prosecution. That is not correct. It is in the nature of a civil proceeding. At the first hearing, the council considered appellant's application for a continuance, and after some discussion, decided to hear certain witnesses then present, including one or two produced by the appellant. Then the hearing was continued to a later date, at which time the appellant and other witnesses appeared and testified. She was given every opportunity to produce any evidence desired. Under these circumstances, we cannot say that the council abused its discretion or denied the appellant any of her rights, by not granting a continuance at the first hearing.

Appellant also urges that the trial court erred in overruling her motion seeking to require the council to file a complete transcript of the records, pleadings and evidence adduced before the council. This motion was filed on November 14, 1955, three years after the order of the council, and after the cause had been transferred to the circuit court. The burden of the motion is that the certified transcript does not show objections to questions asked witnesses which called for hearsay evidence; and that the evidence in the transcript is in narrative form.

Upon examination of the transcript, we find that the evidence was preserved by questions and answers. It is not in narrative form.

■ It is true that the transcript does not show objections to questions which might call for hearsay testimony. The motion to require a correction of the transcript to show such objections is unverified and does not prove itself, and there was no evidence offered that objections were made at any time during the hearing. There is nothing to support the allegations of the motion. Under such circumstances, we

cannot convict the trial court of error in overruling the motion. Furthermore, if the purported hearsay testimony is eliminated from consideration, nevertheless there is substantial evidence to support the finding of the council. Appellant's employees admitted in their testimony that they had sold Stafford beer on many occasions.

Appellant argues that the order revoking her license is harsh and discriminatory. The order is authorized by law; and even though this court might have made a less drastic order if it had heard the case in the first instance, nevertheless we will not convict the council of prejudicial error in entering the order it saw fit to make.

Finding no prejudicial error, the judgment should be affirmed. It is so ordered.

All concur.